**44**

Helen GRAY, Individually and as Executrix of the Estate of Edward A. Gray, Plaintiff–Appellant,

v.

McDONALD'S CORPORATION and Clifford Ferguson and Linda Ferguson, Individually and as Franchise Owners of McDonald's Restaurant, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

Nov. 3, 1993.

Permission to Appeal Denied by Supreme Court April 4, 1994.

Jerry H. Summers, Summers, McCrea & Wyatt, Chattanooga, for plaintiff-appellant.

W.B. Luther and Shane Usary, Luther, Anderson, Cleary & Ruth, Chattanooga, for defendants-appellees.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

Plaintiff appeals from a judgment sustaining Defendants' motion for judgment on the pleadings and dismissing the complaint.

In February, 1992, Plaintiff's husband sustained fatal injuries in the parking lot of the McDonald's restaurant located on Rossville Boulevard in Chattanooga. The decedent was seated in his vehicle in the drive-through lane of the restaurant when he was attacked and shot by an escaped felon who was attempting to rob him.

Plaintiff–Appellant Helen Gray filed a wrongful death action individually and as the executrix of her husband's estate. She named as Defendants the McDonald's Corporation and Clifford and Linda Ferguson, owners of the McDonald's franchise.

In her complaint, Plaintiff alleged the restaurant was located in a high-crime area, Defendants had previously experienced criminal activity on the restaurant premises, and Defendants knew, or reasonably should have known, patrons of the restaurant were at risk of injury from criminal activity. The complaint also alleged Defendants were negligent in failing to provide a security guard on the premises and Defendants' negligence and gross negligence in this regard directly and proximately caused decedent's death. She asked for compensatory and punitive damages.

For answer, Defendants admitted the decedent was shot on restaurant premises. They denied they owed a duty to provide a security guard. They denied they were guilty of any acts of negligence. They said that if they were found to be negligent, the actions of the assailant were an intervening cause of decedent's death.

Defendants filed a motion for judgment on the pleadings pursuant to Rule 12.03, TRCP, alleging the complaint failed to state an actionable claim.

After hearing argument of counsel, the trial judge found the assault was unforeseeable and no duty was owed the Plaintiff. He sustained the motion and dismissed the complaint.

The Plaintiff has appealed, saying the court was in error. We cannot agree, and affirm.

■ In considering a Rule 12.03, TRCP, motion, all of the facts alleged in the complaint must be taken as true and then the issue is whether those facts state a cause of action that should be decided by a jury. *See McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn.1991).

In *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975) our supreme court considered the question of whether merchants and shopkeepers (other than carriers, innkeepers, etc.) are liable for criminal assaults upon their invitees by third parties. The plaintiff in *Cornpropst* parked her car in the parking lot of a shopping center and went into a store to shop. As she departed the store and was preparing to reenter her vehicle, she was attacked and beaten by an assailant who tried to force her into his car. Plaintiff filed suit for personal injuries against the merchants and owners who comprised the shopping center association. The court held, at 198:

> There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants or shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose an imminent probability of harm to an invitee; whereupon the duty of reasonable care to protect against such act arises.

*See also Page v. American Nat'l Bank & Trust Co.*, 850 S.W.2d 133 (Tenn.App.1991) (concerning an assault at an automated teller machine); *Stafford v. Church's Fried Chicken*, 629 F.Supp. 1109 (E.D.Mich.1986) (concerning an assault in the drive-through line of a fast-food restaurant).

■ In the case at bar, the complaint alleged the McDonald's drive-in was located "in an area where a substantial amount of criminal activity occurs." It also alleged criminal activity occurred upon the restaurant premises prior to the incident involving the decedent. Similarly, the plaintiff in *Cornpropst* alleged numerous criminal acts had occurred in the past on and around the shopping center.

The *Cornpropst* court said, "Conditions in the area are irrelevant." 528 S.W.2d at 197. As for the occurrence of prior criminal acts on defendant's premises, the court said, at 197:

> [H]ow many criminal acts are necessary to invoke the duty to warn and how many are necessary to impose the duty to hire a private police force? Is the Court to determine the number, or is the jury permitted to speculate upon the appropriate number of criminal acts to give rise to the duty? Is it not also appropriate to consider the time element? After a lapse of six months, one year or two years without an incident or a criminal act, can a merchant disband his private police force?
>
> In our opinion it is a mistake to equate the duty of shopkeepers with respect to criminal acts with the duty of shopkeepers with respect to careless acts.

The *Cornpropst* court also quoted with approval from the Oklahoma Supreme Court case of *McMillin v. Barton–Robison Convoy Company*, 182 Okl. 553, 78 P.2d 789 (Okl. 1938). In the Oklahoma case, plaintiff's decedent was killed during a robbery on decedent's employer's premises. Plaintiff sued the employer, alleging the employer handled automobiles that were stolen from his premises on other occasions prior to the killing. Plaintiff also alleged "the business was in a high crime area wherein eighty (80%) percent of the crime committed in the county occurred." The Oklahoma Supreme Court, responding to plaintiff's contentions, said:

> We are unable to see that an employer has a general duty to protect his employees from the assaults of criminals. We are likewise unable to see that there are any exceptional circumstances in this case which would give rise to such a duty. To

so find would be tantamount to saying that the town of Picher is a condemned community. We would be saying, in legal effect, that those who live there and those who engage in business there are not exercising the prudence and judgment of ordinary people. To hold what the plaintiffs want us to hold would result in saying that every business man in the town of Picher is guilty of negligence toward those he employs and is answerable to them for their damages suffered as a result of the act of some criminal.

We find the reasoning of the *McMillin* court to be instructive in this case as well.

Appellant argues that the facts at bar are distinguishable from the facts in *Cornpropst*. She argues *Doe v. Linder*, 845 S.W.2d 173 (Tenn.1992) and *Zang v. Leonard*, 643 S.W.2d 657 (Tenn.App.1982) are the controlling authorities here. We cannot agree, and find the Appellant's reliance on *Doe* and *Zang* is misplaced.

In the *Doe* case, the plaintiff, who had purchased a house in a new residential development, was raped by an independent contractor and his accomplice who had stolen a key to gain access to her house. The contractor, who was employed by the builder-developer, stole the key to the building which later became the sales office and used that key to steal the keys to plaintiff's residence. Plaintiff sued the builder-developer, alleging negligence in the storing of the keys and in hiring the assailant. Upon the trial of the case, the court found the criminal assault on the plaintiff was an independent intervening act and sustained a motion for summary judgment and dismissed the complaint. Upon appeal, the court of appeals reversed. The supreme court, in reversing the court of appeals, said: "This court's review of the evidence shows that the trial court properly granted summary judgment in favor of the defendants." *Id.* 175.

Also, the *Doe* court, in addressing its holding in *Cornpropst*, said:

> *Cornpropst*, 528 S.W.2d at 192. Finally, the Court approved the following statement from *Corbitt v. Ringley–Crockett, Inc.*, 496 S.W.2d 914 (Tenn.App.1973), in recognizing one special circumstance:

> "We hold that if the owner is to be held liable for the sudden criminal acts of third persons there must be a showing that the owner was on notice in some manner of the imminent probability of the act. Otherwise, there can be no issue for jury determination. There is no such showing in this record. The Trial Court should have directed a verdict for the defendants."

> *Corbitt*, 496 S.W.2d at 919.

We find the decision in *Doe v. Linder* supports the holding of the trial court in the case at bar.

The *Zang v. Leonard* case upon which the Appellant relies to support her argument is an "innkeeper" case. The plaintiff in *Zang* was a resident of a motel and sued the motel operators for damages when he was shot by a robber in the motel parking lot. The court observed in *Cornpropst* that there are certain types of businesses which fall into the "no duty" rule in *Cornpropst* and the "innkeeper-guest" relationship is one specific business-invitee relationship that has sometimes been held to give rise to a duty:

> Liability for nonfeasance was ... slow to receive recognition in the law. It first appears in the case of those engaged in "public" callings, who, by holding themselves out to the public, were regarded as having undertaken a duty to give service, for the breach of which they were liable. This idea still survives in the obligation of common carriers, *innkeepers*, public warehousemen, and public utilities to serve all comers. (Emphasis ours.)

528 S.W.2d at 192 (quoting Prosser, Law of Torts § at 339 (4th ed.)). The court further said: "The calls involving liability for the criminal acts of third persons are most numerous involving the innkeeper relationship ..." *Id.* 192–93.

The Plaintiff argues that a drive-through restaurant is akin to a hotel or motel because "the nature of defendants' business was to offer a service of a type normally found in one's own home." Plaintiff argues "[t]he nature of defendants' invitation was to come to a specific business (a restaurant) for the purpose of eating. The relationship between the defendants and plaintiff was, therefore,

more direct and more intimate than the *Cornpropst* invitation to come to a public parking lot for the purpose of browsing in or making purchases at one or more of the various retail establishments available."

Plaintiff's argument is without merit. We find nothing homey or intimate about selling hamburgers to motorists at a drive-through window. As Defendants point out, a patron may be on the premises for a matter of minutes and is presumably purchasing food for off-premises consumption. Plaintiff argues the *Cornpropst* opinion should be limited to shopping centers and the merchants therein. Plaintiff, however, overlooks the general rule with which the supreme court, in *Cornpropst*, premised its opinion. The court stated, at 191:

> At common law, a private person or corporation, as distinguished from governmental units, had no duty whatsoever to protect others from the criminal acts of third parties. That general rule has remained steadfast in the tort law of this country, despite the exceptions that have appeared from time-to-time, where special relationships and special circumstances have combined to impose liability.

We hold as the supreme court held in *Cornpropst*. The minds of reasonable men cannot differ but that the sudden act of the deceased attacker, which could not have been prevented or deterred by the exercise of reasonable care by McDonalds, was the sole proximate cause of harm to the deceased.

The judgment of the trial court is affirmed. The cost of this appeal is taxed to the Appellant and the case is remanded to the trial court.

GODDARD and McMURRAY, JJ., concur.